lml
## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BOILERMAKERS NATIONAL HEALTH AND WELFARE TRUST, et al.,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| v.   ) | No.  09-2329-JAR |
| ) | |
| **JUDITH A. STEELE, et al.,** ) ) | |
| **Defendants.** ) ) | |

### MEMORANDUM AND ORDER

Plaintiffs, the Boilermakers National Health and Welfare Trust ("the Trust") and its Board of Trustees filed this action to enforce the terms of the Boilermakers National Health and Welfare Fund's Plan M (hereinafter "the Plan") and for equitable relief arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq.  The Trust names as defendants Judith A. Steele, Timothy Steele, Mark Tanner, Esquire, and the law firm of Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock & Dodig ("the Feldman Shepherd law firm").  This matter is before the Court on defendants' Motion to Dismiss for Lack of Personal Jurisdiction, to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted, or, in the Alternative, to Transfer Venue (Docs. 17, 19).  The motion is fully briefed and the Court is prepared to rule.  As described in more detail below, the Court denies defendants' motion to dismiss, and transfers the case to the Eastern District of Pennsylvania.

**I.      Factual Background**

Defendant Timothy Steele, who resides in Philadelphia, Pennsylvania, is a member of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers,

AFL-CIO Local Lodge No. 13. Steele obtained health care coverage for his family through the Trust, which provides benefits through the Boilermakers National Health and Welfare Plan M ("Plan M"). As a result of medical malpractice, his wife, co-defendant Judith Steele, suffered a spinal cord injury that left her disabled. One hundred thirty-four claims were submitted to the Trust, and the Trust paid medical bills for Mrs. Steele totaling $530,452.52.[1]

In 2006, Mrs. Steele sent the Trust a signed "Subrogation Information Sheet" in which she indicated she had a back injury and had retained counsel to represent her. In May 2006, the Trust sent correspondence to Mark Tanner, Mrs. Steele's counsel, requesting information about any lawsuit and asking whether the Steeles would be willing to protect the Trust's subrogation interest. Tanner responded that no lawsuit had been filed and requested information about the Trust's subrogation interest. In July 2006, the Trust wrote Mr. Steele to inform him that if Steele filed a lawsuit or accepted settlement relating to any malpractice claim, the Fund must be notified immediately. The Trust sent Mr. Steele pertinent portions of the Summary Plan Description that described its right of subrogation and reimbursement, and sent Tanner a copy of the correspondence.

In late 2006, the Steeles filed a medical malpractice lawsuit in the Philadelphia County Court of Common Pleas. Tanner sent the Trust a copy of the Complaint. The Trust notified counsel for defendants that it was asserting its subrogation and reimbursement rights, and Tanner declined to represent the Trust in the malpractice case. In February 2008, the Trust attempted to intervene in the malpractice lawsuit. Tanner opposed the motion on behalf of the Steeles, and in May 2008, the Pennsylvania court denied the petition without comment. The defendant doctor

---

[1]Although defendants dispute that all of these claims related to the medical malpractice claim, they do not dispute that numerous claims were submitted with respect to Mrs. Steele's back injury.

2

in the medical malpractice lawsuit successfully opposed the Steele's recovery of medical expenses paid by the Boilermakers.

In June and December 2008, counsel for the Trust sent Tanner correspondence again asserting its subrogation and reimbursement rights against the Steeles.  Tanner responded in December 2008, stating the Steele's position that they did not recover any monies representing reimbursement for any expenses paid by the Boilermakers and making a settlement proposal. From February to May 2009, counsel for the Trust and the Steeles exchanged correspondence regarding various settlement proposals.  The medical malpractice lawsuit settled on June 4, 2009, and defendants Mark Tanner and Feldman Shepherd are holding in escrow settlement amounts received by the Steeles, which total $530,452.50, until the dispute between the parties is resolved.[2]

On June 9, 2009, defendant Tanner sent correspondence to counsel for the Trust in which he denied the Trust had reimbursement and subrogation rights and threatened to sue the Trust's counsel, Blake & Uhlig, P.A. and the Trust if the Trust did not withdraw its putative lien against the Steeles within seven (7) days.  On June 17, 2009, counsel for the Trust sent correspondence to Tanner notifying him that the Trust intended to take further legal action against Tanner and the Steeles in the District of Kansas.  This suit was filed in the District of Kansas on June 18, 2009, seeking declaratory and injunctive relief to enforce its reimbursement rights under ERISA and the terms of the Plan.  On June 24, 2009, the Steeles filed a lawsuit in the Eastern District of Pennsylvania, Case No. 09-2837 (the "Pennsylvania Action"), alleging that by seeking to enforce the Fund's reimbursement rights for medical bills paid on Mrs. Steele's behalf, the Trust

---

[2](Doc. 17-1.)

3

and its counsel, Blake & Uhlig, violated the Fair Debt Collection Practices Act ("FDCPA") and Pennsylvania state collection laws. In the Pennsylvania Action, the Steeles are seeking damages for violations of the FDCPA and state laws and have requested a jury trial. The Steeles also seek declaratory relief and have asked the Pennsylvania district court to hold that the Trust's reimbursement rights are invalid under Pennsylvania law.

On July 7, 2009, this Court denied plaintiffs' Motion for Temporary Restraining Order.[3] On July 20, 2009, defendants filed the instant motion to dismiss or transfer this case. On July 31, 2009, the Trust and counsel filed a Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief Can be Granted or, in the Alternative, to Transfer the case to the District of Kansas, which remain pending before the Pennsylvania district court. Although no stay has been entered in these proceedings, upon joint motion of the parties, the scheduling conference has been continued until this matter is resolved, and no discovery or other deadlines have been established.[4]

The Trust's principal place of business is in Kansas City, Kansas, where it is administered. The defendants have never been to Kansas, have no property or other assets in Kansas and have no registered agent in Kansas. Mrs. Steele has made several phone calls to the Fund pertaining to medical benefits and has completed medical benefit forms that were returned by mail to the Fund in Kansas. The Feldman Shepherd law firm is located in Philadelphia, Pennsylvania. None of the eighteen attorneys at the firm have ever been admitted to practice in a

---

[3](Doc. 11.) Although plaintiffs' motion also sought a preliminary injunction, that request appears moot in light of defendants' voluntary agreement to hold the settlement amounts in escrow pending resolution of the parties' disputes.

[4](Doc. 25.)

Kansas court, nor have they ever represented a citizen of Kansas in a civil lawsuit. Defendant Tanner sent six letters to the Boilermakers and their attorneys, and had several phone conversations with those individuals, as part of the claim that is the subject of this litigation.

The Court's review of the docket sheet in the Pennsylvania action indicates that defendants' motion to dismiss and for transfer to the District of Kansas remains pending and it appears the case has been informally stayed pending this Court's determination of where the dispute should be litigated. Both parties agree that this dispute must be litigated in a single action in one court.

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiffs bear the burden of establishing personal jurisdiction over these nonresident defendants.[5] When the Court declines to hold an evidentiary hearing, as it does here, "the motion rests on the plaintiff's complaint and affidavits submitted by the parties, the plaintiff need only make a prima facie showing of personal jurisdiction."[6] Plaintiffs may make the showing "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[7] "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving

---

[5]*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)).

[6]*Id.*; *Multi-Media Int'l LLC v. Promag Retail Servs., LLC*, 343 F. Supp. 2d 1024, 1027 (D. Kan. 2004).

[7]*Multi-Media Int'l LLC*, 343 F. Supp. 2d at 1027 (quoting *OMI Holdings*, 149 F.3d at 1091).

party."[8]

There is no dispute that the Complaint invokes federal question jurisdiction pursuant to section 502(e)(2) of ERISA, which provides for nationwide service of process.[9] The Tenth Circuit has explained that when nationwide service of process is authorized by the governing federal statute, "it becomes the statutory basis for personal jurisdiction" provided that due process is satisfied.[10] In such a case, "the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment protects individual litigants against the burdens of litigation in an unduly inconvenient forum."[11]

To show that jurisdiction offends the Fifth Amendment, defendants must establish that their liberty interests actually have been infringed.[12] In determining whether defendants have met their burden "of establishing constitutionally significant inconvenience," the Court should consider:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated

---

[8]*Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).

[9]29 U.S.C. § 1132(e)(2).

[10]*Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (quotations omitted); *see also Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006).

[11]*Peay*, 205 F.3d at 1212 (quotation omitted).

[12]*Id.*

> activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.
>
> We emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. Certainly, in this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened.[13]

If defendants make a showing that litigation in Kansas is unduly inconvenient, "then jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant."[14] In making this determination,

> courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.[15]

Because the parties agree that ERISA authorizes nationwide service of process, the first prong of the two-prong test is satisfied. Thus, the Court will analyze the Due Process factors applicable to whether it should exercise personal jurisdiction over the Pennsylvania defendants in this case.

Applying the foregoing broad standard to this case, the Court concludes that defendants have failed to show that their Due Process interest has been infringed. First, the Court concludes

---

[13]*Id*. at 1212–13 (citations, quotations, and footnote omitted); *see Lone Star Steakhouse & Saloon, Inc.*, 169 F. Supp. 2d at 1200; *Talkin v. Deluxe Corp.*, No. 05-2305-CM, 2007 WL 1469643, at *2 (D. Kan. May 18, 2007).

[14]*Peay*, 205 F.3d at 1213 (quotation omitted).

[15]*Id.* (quoting *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997)).

that defendants have sufficient contacts with Kansas. Over one hundred claims have been submitted to the Trust's Kansas City, Kansas office on behalf of the Steeles by covered providers; each of these claims is a separate contact by which the Steeles have purposely availed themselves of benefit payments from the Trust in Kansas. Likewise, defendant Tanner's communications with the Trust provided notice, on behalf of the Steeles, of their position with respect to the subrogation and reimbursement rights as well as their intent to proceed with a lawsuit to enforce that position. Because defendants submitted claims for benefits in Kansas, they knew or should have known that a dispute over benefits could arise in Kansas.[16] Second, inconvenience to defendants of defending this case in Kansas does not rise to the level of constitutional concern. Although the distance between Pennsylvania and Kansas is significant, defendants have not persuaded the Court that defending this action in Kansas rises to a level of constitutional concern given modern modes of transportation and communication. Third, the parties both acknowledge that judicial economy dictates that the two pending cases involving the same issues should not be litigated in two different forums, making this factor neutral. Fourth, with respect to discovery, it appears that the main issue in this case raises the purely legal issue of the Fund's subrogation rights under ERISA, which lends itself to summary disposition based on affidavits and/or deposition evidence. That any relevant medical records may be located in Pennsylvania does not rise to the level of constitutional inconvenience; indeed, many of these records are located in Kansas, as they were submitted to the Trust on the Steele's behalf. To the extent witnesses would have to travel to Kansas, the Court does not view travel as constitutionally burdensome. In sum, the jurisdictional hurdle set by the Due Process Clause of

---

[16] *See id.* at 1213.

the Fifth Amendment is easily cleared by plaintiffs in this case. As noted above, the Tenth Circuit has stated "that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."[17] This is not such a case. Under the facts asserted, defendants simply cannot demonstrate that the exercise of jurisdiction "is so gravely difficult and inconvenient that [defendants are] at a severe disadvantage in comparison to [their] opponent."[18] Having failed to show that the assertion of jurisdiction by this Court will infringe upon defendants' liberty interest, the Court need not balance the federal interests at stake. As a result, this Court has jurisdiction over defendants.

### III. Motion to Transfer

As an alternative to their motion to dismiss for lack of personal jurisdiction, defendants move the Court to transfer this case to the Eastern District of Pennsylvania. Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides in relevant part, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[19] ERISA's liberal venue provision provides that venue is proper where a plan is administered or where a defendant resides or may be found.[20] Section 1404(a) affords the district court with broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness.[21] The parties proposing a particular forum have the burden of proving that the

---

[17]*Id*. at 1212-13.

[18]*Id*. (quotation omitted).

[19]28 U.S.C. § 1414(a).

[20]29 U.S.C. § 1132(e)(2).

[21]*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

chosen forum is inconvenient.[22]

### *First-to-File Rule*

Defendants argue that the Trust's first-filed suit in Kansas is an anticipatory filing that warrants departure from the first-filed rule.[23] The Tenth Circuit applies the first-to-file rule, which "permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court."[24] The parties only need to be substantially similar for the rule to apply.[25] The presumption usually afforded the party who files first is not a rigid or mechanical rule; courts have carved out an exception where the first-filed suit constitutes an improper anticipatory filing, or one made under the threat of a presumed adversary filing the mirror image of that suit in a different district.[26] "A district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction."[27]

---

[22] *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

[23] Although a motion to transfer is also pending in the Pennsylvania litigation, the court in which the first-filed case was brought decides the question of whether or not the first-to-file rule or an exception thereto, applies. *See Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, No. 02-2448-KHV, 2002 WL 31898317, at *2 (D. Kan. Dec. 10, 2002)(collecting cases).

[24] *Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010) (citing cases).

[25] *Id.* (citations omitted).

[26] *Universal Premium*, 2002 WL 31898317, at *2 (citing *Boatmen's First Nat'l Bank v. KPERS*, 57 F.3d 638, 641 (8th Cir. 1995)) (stating "red flags" that suggest compelling circumstances to disregard the first-filed rule include notice that other side was considering filing lawsuit, and fact that first-filed suit was a declaratory judgment action).

[27] *Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*, 189 F.3d 477 (Table) (10th Cir. 1999)( citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)).

The Trust filed the Kansas suit eleven days after receiving the demand letter from Tanner threatening a lawsuit. The record indicates that the Fund asserted a putative lien on any amounts recovered by the Steeles and the parties engaged in discussions disputing each others' positions throughout the two-year span of the malpractice lawsuit. Until June 9, 2009, however, neither had sent a formal demand letter. Indeed, in the months preceding that letter, the parties had been discussing a settlement. The Court concludes that the declaratory judgment action before it was filed in anticipation of a trial of the same issues in Pennsylvania and is indicative of a preemptive strike rather than a suit for damages or equitable relief.[28] While the Court recognizes that defendants' action in Pennsylvania seeks, in part, declaratory relief, it also clearly seeks damages and equitable relief, as expressed in the June 9, 2009 correspondence notifying the Trust that defendants intended to pursue such relief. The Court declines to apply the first-to-file rule under these circumstances.

Moreover, when competing actions are filed within a short time of each other, courts may disregard the first-filed rule.[29] Unaware that the Trust had filed suit, defendants filed their Pennsylvania action one week after the Trust filed in Kansas. The Steeles effected service on the Trust on June 29, 2009; the Steeles were served with the Trust's Complaint the next day. The close proximity of the initiation of the two actions, coupled with the near-simultaneous service of process, further convinces the Court that the first-to-file rule is not applicable in this case.[30]

---

[28]*See U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 489 (8th Cir. 1990) (noting that where second-filed action sought damages, defendant in first-filed declaratory judgment action should be considered "true" plaintiff).

[29]*Universal Premium*, 2002 WL 31898217 at *2.

[30]*See Employers Reinsurance Corp. v. MSK Ins., Ltd.*, No. 01-2608-CM, 2003 WL 21143105, at *6 (D. Kan. Mar. 31, 2003) (transfer to second court when second action filed eleven weeks after first action, with simultaneous service of process); *Affinity Memory & Micro v. K & Q Enter.*, 20 F. Supp. 2d 948, 954-55 (E.D. Va.

### *Balance of Convenience*

Having determined that the first-to-file rule does not apply, the Court turns to whether defendants have met their burden of establishing that the existing forum is inconvenient such that transfer of this case to the Eastern District of Pennsylvania is appropriate. In evaluating a transfer under § 1404(a), the court considers plaintiff's choice of forum; the convenience for witnesses, the accessibility of witnesses and other sources of proof; the relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and "all other considerations of a practical nature that make a trial easy, expeditious and economical."[31] The Court bears in mind that transfer is not appropriate if the result is merely to shift the inconvenience from one party to the other.[32]

Defendants argue that this Court should transfer venue to the Eastern District of Pennsylvania because the fact witnesses concerning their FDCPA and state law claims reside in Pennsylvania, all defendants are located in Pennsylvania, the underlying medical malpractice action was litigated in Pennsylvania, and the disputed medical bills were incurred in Pennsylvania. Defendants also argue that because Pennsylvania's anti-subrogation law precluded the recovery of medical bills in the underlying medical malpractice action, Pennsylvania law must be interpreted in this case to determine whether it preempts the ERISA plan. Defendants also assert that if compelled to litigate their claim in Kansas, they will incur

---

1998) (transfer to second court where two-week gap between filings).

[31] *Aramburu v. Boeing Co.*, 896 F. Supp. 1063, 1064 (D. Kan. 1995) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509-1515-16 (10th Cir. 1991)).

[32] *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998).

significant expenses, including the fees for local counsel and the cost of travel to Kansas.

After careful consideration, the Court finds that defendants have established sufficient facts to warrant transfer of this case to Pennsylvania. Although disturbing plaintiffs' choice of forum in an ERISA case should be more difficult,[33] the balance of other facts and circumstances in this case overrides that factor. The Court notes that the consideration of having a Pennsylvania court determine questions of Pennsylvania law favors transferring this case to the Eastern District of Pennsylvania.[34] Likewise, the Court's finding that this case was an anticipatory filing of the related case in the transferee forum tilts the balance in favor of transfer. Moreover, although the Steeles and their medical providers may not be necessary witnesses in the Kansas ERISA action, that is not the case if the FDCPA and state court claims proceed. While it would be inconvenient for the Trust's witnesses to travel to Pennsylvania, it would be difficult, if not impossible, for Mrs. Steele to travel, given her permanent and disabling injuries. The Court therefore concludes that the balance is strongly in favor of transferring this case to Pennsylvania, where it can be consolidated with the nearly identical case pending in the Eastern District of Pennsylvania. Accordingly, the Court does not reach the pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss or Transfer (Docs. 17, 19) is granted in part and denied in part. This case is hereby transferred to the Eastern District of Pennsylvania.

**IT IS SO ORDERED.**

---

[33] *Boilermaker-Blacksmith Nat'l Pension Fund v. Gendron*, 67 F. Supp. 2d 1250, 1257 (D. Kan. 1999).

[34] Indeed, the Trust and Blake & Uhlig have retained Pennsylvania counsel and have submitted extensive briefing on the Pennsylvania law/preemption issues, which remain pending before that court.

Dated: June 2, 2010

 S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE